# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ROSA BARRAZA on behalf of**
**MRB (a minor),**

      **Plaintiff,**

**vs.**                                                               **No.  07cv1083 DJS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Reverse and Remand for Reinstatement of Benefits, or in the Alternative, for a Rehearing, with Supporting Memorandum **[Doc. No. 16]**, filed on March 17, 2008, and fully briefed on May 20, 2008.  On April 25, 2007, the Commissioner of Social Security issued a final decision, finding the child-claimant's disability ended as of January 1, 2004.  Plaintiff seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to reverse and remand is well taken and will be **GRANTED**.

### I.  Procedural Background

On March 9, 1999, Plaintiff filed an application for supplemental security income payments on behalf of her daughter MRB (D.O.B. October 23, 1991), alleging disability since August 1995, due to speech and language delays (Tr. 119) and a learning disability (Tr. 138).  On

July 20, 2000, the agency found MRB disabled and granted MRB supplemental security income payments. On January 15, 2004, the agency determined MRB, now twelve years old, was no longer disabled as of January 1, 2004. Plaintiff requested a hearing before an administrative law judge (ALJ) after a State agency Disability Hearing Officer upheld the agency's determination that MRB was no longer disabled.

The ALJ entered an unfavorable decision on June 22, 2005. After the Appeals Council declined Plaintiff's request for review, Plaintiff filed a civil action in district court. On July 14, 2006, the magistrate judge declined to "analyze the substance of the ALJ's opinion" and remanded the matter to the Commissioner on the basis that, although a Spanish interpreter was present at the administrative hearing, the interpreter "did not translate for Ms. Barraza either [MRB's] testimony or the ALJ's questions" to MRB. Tr. 528. MRB is bilingual and did not require the services of an interpreter.

On December 5, 2006, a second ALJ held a supplemental hearing. On April 25, 2007, the ALJ entered an unfavorable decision. Plaintiff filed a Request for Review of the decision by the Appeals Council. On September 27, 2007, the Appeals Council considered Plaintiff's request for review but found "no reason under our rules to assume jurisdiction." Tr. 490. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Plaintiff seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

The Commissioner follows a three-step process to determine whether to discontinue childhood benefits that have previously been awarded. Section 416.994a(b) states in pertinent part:

1. Has there been medical improvement[1] in your condition(s)? [The Commissioner] will determine whether there has been medical improvement in the impairment(s) [claimant] had at the time of [the Commissioner's] most recent favorable determination or decision. If there has been no medical improvement, [the Commissioner] will find that [the claimant's] disability continues.

2. Does [the claimant's] impairment(s) still meet or equal the severity of the listed impairment that it met or equaled before? If there has been medical improvement, [the Commissioner] will consider whether the impairment(s) that [the Commissioner] considered at the time of [the Commissioner's] most recent favorable determination or decision still meets or equals the severity of the listed impairment it met or equaled at that time. If that impairment(s) still meets or equals the severity of that listed impairment as it was written at that time, [the Commissioner] will find that [the claimant] is still disabled.

3. Is [the claimant] currently disabled? If there has been medical improvement in the impairment(s) that [the Commissioner] considered at the time of [the Commissioner's] most recent favorable determination or decision, and if that impairment(s) no longer meets or equals the severity of the listed impairment that it met or equaled at that time, [the Commissioner] will consider whether [the claimant] is disabled under the rules in §416.924(c) and (d).

---

[1] Under the regulations, "medical improvement is any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable decision that you were disabled or continued to be disabled. Although the decrease in severity may be of any quantity or degree, the [Commissioner] will disregard minor changes in [a claimant's] signs, symptoms, and laboratory findings that obviously do not represent medical improvement and could not result in a finding that [a claimant's] disability has ended." 20 C.F.R. §416.994a(c).

20 C.F.R. §416.994a(b)(1)-(3).

At this point, the Commissioner will conduct a sequential evaluation of the child's alleged impairment(s). 20 C.F.R. §416.994a(b)(3). First, the Commissioner will determine whether the child has a severe impairment. 20 C.F.R. §416.994a(b)(3)(i); *see also* 20 C.F.R. §416.924(c). Second, if the child has a severe impairment, then the Commissioner will determine whether the impairment meets, medically equals (as described in §§416.925 and 416.926), or functionally equals (as described in §416.926a) an impairment listed in Appendix 1 to Subpart P of the governing regulations. 20 C.F.R. §416.994a(b)(3)(ii-iii).

If the child's impairment does not meet a listing, the ALJ must determine whether the child's impairment is functionally equivalent to the listing, using the domains listed in 20 C.F.R. §416.926a(b)(1)(i-vi). Section 416.926a states, in pertinent part:

> If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings. By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section.
>
> ** ** ** ** **
>
> We will consider how you function in your activities in terms of six domains. These domains are broad areas of functioning intended to capture all of what a child can or cannot do. The domains we use are:
>
> (i)    Acquiring and using information;
> (ii)   Attending and completing tasks;
> (iii)  Interacting and relating with others;
> (iv)   Moving about and manipulating objects;
> (v)    Caring for yourself; and
> (vi)   Health and physical well-being.

20 C.F.R. §416.926a(a) & (b)(1)(i)-(vi). Section 416.926a(e) defines "marked" and "extreme" limitations. A "marked" limitation interferes seriously with the child's ability to

5

independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3)(i). "Extreme" limitation also means a limitation that is "more than marked." *Id.* An "extreme" limitation is the rating the Commissioner gives to the worst limitations. *Id.*

First, Plaintiff contends that the ALJ's finding that MRB has a "less than marked" limitation in the domain of acquiring and using information is not supported by substantial evidence. Plaintiff also contends that MRB's functioning more than 4 levels below grade is equivalent to three standard deviations below the mean and should be considered an extreme limitation. Second, Plaintiff challenges the ALJ's finding that MRB did not have a marked limitation in the domain of attending and completing tasks. Plaintiff contends this finding is not supported by substantial evidence.

## **A.  Domain of Acquiring and Using Information**

In his decision the ALJ found:

As of January 1, 2004, the impairments that the claimant had at the time of the CPD (comparison point decision) did not functionally equal the Listing of Impairments (20 C.F.R. §416.994a(b)(2) and 416.926a and SSR 05-03p).

\*\* \*\* \*\* \*\* \*\*

The claimant's mother testified that [MRB] was in 9th grade and was in special education classes. Although her mother testified that [MRB]'s grades were very low, her report card show that despite some Ds and Fs, she had an A and a B+ in biology and a B- and a B+ in reading (Exhibit 17-E). Her mother further testified that [MRB] has a tendency to get upset with her siblings. She complained of headaches and did not do her homework. She also continued to carry her doll with her. Although the claimant's mother testified that [MRB] played with younger children, she also stated in her Child Function Report that [MRB] got along with children her own age and had friends her own age (Exhibit 10-E, p.7).

6

I have also considered the opinion evidence, consistent with 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

\*\* \*\* \*\* \*\* \*\* \*\*

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible.

To determine whether a child's impairments functionally equals the listings, an assessment is made as to how appropriately, effectively, and independently the child performs activities compared to other children the same age who do not have impairments (20 C.F.R. §416.926a(b)). The evaluation of a child's activities is performed with respect to six domains of functioning that are intended to capture all of what a child can or cannot do. To functionally equal the listings, a child's impairments must be of listing-level severity; that is, it must result in "marked" limitation in two of the domains of functioning described in 20 C.F.R. 416.926a(g)-(l), or "extreme" limitation in one of the domains.

I find that as of January 1, 2004, the claimant's impairments that were present as of the CPD resulted in the following limitations in terms of the six domains of function:

    **a.**    **Acquiring and Using Information**

This domain considers how well a child is able to acquire or learn information, and how well a child uses the information she has learned (20 C.F.R. §416.926a(g)).

The regulations provide that an adolescent (i.e., a child age 12 to attainment of age 18) without an impairment should continue to demonstrate in middle and high school what she has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). The child should also be able to use what she has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation). The child should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). The child should also learn to apply these skills in practical ways that will help her enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)(20 C.F.R. §416.926a(g)(2)(v)).

\*\* \*\* \*\* \*\* \*\* \*\*

<u>As of January 1, 2004, the claimant had a "less than marked" limitation in the domain of acquiring and using information as a result of the impairments present at the CPD</u>.

The September 2, 2004 consultative psychological examination report by Michael Rodriguez, Ph.D. revealed that [MRB] had a learning disorder dating back to her preschool years. It was clear, however, that there was a compound between her communication disorder and her English language proficiency. It was notable that she had a communication disorder even in

7

> the Spanish language. She also appeared to have a learning disability as evidenced by her being served in special education for a learning problem. However, her cognitive abilities on the TONI-III placed her in the low average and did not suggest an intellectual disability at that time. Dr. Rodriguez' examination showed that [MRB] had a good immediate memory and successfully counted backward from 100 to 90. She was able to follow a three-step oral instruction and a one-step written instruction and to write down a sentence spontaneously. She could also correctly copy two intersecting pentagons. She had an equivalent IQ score of 82 on the TONI-III (Exhibit 15-F).
>
> [MRB] has an Individualized Education Program through Albuquerque Public Schools– Special Education on the basis of a specific learning disability (Exh18-F). Despite her mother's testimony that [MRB]'s grades were very low, her report card shows that in addition to some Ds and Fs, she also had an A and a B+ in biology and a B- and a B+ in reading (Exhibit 17-E). The claimant's mother also reported to Dr. Rodriguez that [MRB] generally obtained a "B" average (Exhibit 15-F; p.2).
>
> Georgia Montoya, speech-language pathologist, reported in her May 17, 2004 Speech and Language Questionnaire that [MRB]'s speech and language delays only sometimes adversely affected her educational performance. It is interesting to note that Ms Montoya went on to state that the major factor affecting [MRB]'s academic performance was her learning disability (Exhibit 13-F, p.2).
>
> [MRB]'s classroom teacher for the sixth grade reported that [MRB] had 3rd grade reading, math, and written language instructional levels. [MRB] had very serious problems with understanding and participating in class discussions and providing organized oral explanations and adequate descriptions. She had a serious problem with recalling and applying previously learned material and applying problem-solving skills in class discussions. She had an obvious but not serious problem with reading and comprehending written material, comprehending and doing math problems, expressing ideas in written form, and learning new material. However, she had only a slight problem with comprehending oral instructions and understanding school and content vocabulary. Her teacher noted that [MRB] needed a lot of prompting to get her work done. She received special education services in all classes but her one elective (Exhibit 10-F, p.2).

Tr. 501-504.

Plaintiff contends MRB's language disorder continues to be a serious problem. Plaintiff relies on a Speech and Language Evaluation done by Mary Hunt, a bilingual speech pathologist, on November 13, 2003. Although the ALJ relied on a Speech and Language Questionnaire Ms. Montoya completed in May 2004, Ms. Hunt's evaluation was done only six months earlier.

8

In the domain of acquiring and using information, the Commissioner considers how well the claimant learns information and how well the claimant uses the information. 20 C.F.R. §416.926a(g). Under the regulations, adolescents (age 12 to attainment of age 18) "should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas)." 20 C.F.R. §416.926a(g)(2)(v).

The ALJ noted Ms. Montoya opined that MRB's speech and language delays "only sometimes adversely affected her educational performance." Tr. 504. However, Ms. Montoya also found that MRB (1) frequently had trouble getting to the point; (2) frequently did not ask for repetition or clarification when obviously confused; (3) frequently had trouble conversing with friends and family in everyday conversation; (4) frequently had trouble taking part in classroom discussion; and (5) frequently had trouble exchanging ideas clearly, concisely, and succinctly; (6) frequently had trouble understanding frequently used vocabulary words; (7) frequently had trouble answering questions about a read-aloud story; (8) frequently had trouble following a classroom discussion; (9) frequently asked for or needed repetition of oral directions; (10) frequently has trouble understanding ordinal or temporal terms; (11) frequently has trouble understanding sarcasm and figurative language; (12) frequently had a weak expressive vocabulary; (13) frequently could not find the right words when talking; (14) frequently used grammatically simple sentences as primary means of communicating; (15) frequently had trouble forming complex sentences, including words such as "so" or "if"; (16) frequently had trouble describing a picture/object (e.g., using attributes, telling the function); (17) frequently had trouble explaining a situation; (18) frequently had trouble telling a joke or using humor; and (19) frequently used poor

expressive language skills, overall.  Tr. 383-384.  These many areas of concern which Ms. Montoya noted as "frequent" are problems that would appear to indicate MRB has problems comprehending and expressing both simple and complex ideas.[2]

Ms. Montoya's responses to the May 2004 Speech and Language Questionnaire are similar to Ms. Hunt's findings.  Ms. Hunt's evaluation indicated that MRB was "exhibiting a **severe** receptive and expressive language delay."  Tr. 281(emphasis added).  Ms. Hunt noted the following:

> **Vocabulary**
> Results of the Expressive One Word Picture Vocabulary Test-Revised-Spanish/Bilingual Edition indicate [MRB] is exhibiting a <u>marked weakness in expressive vocabulary skills</u>. <u>Scores are approximately 4 years below age level</u>.  Results of the <u>Receptive One Word Picture Vocabulary</u> Test-Spanish/Bilingual Edition indicate <u>[MRB] is exhibiting scores which are approximately 5 years below age level</u>.  Standard scores on both test are significantly below average.  <u>There is no significant difference between receptive and expressive skills</u>.
>
> **Syntax and Grammar**
> Results of the Formulated Sentences Subtest of the CELF-3-Spanish Edition indicates <u>[MRB] is exhibiting significantly below average skills in planning and producing sentences for conversation.</u>  Spontaneous connected speech is characterized by inconsistent grammar and syntax.  Discourse skills are poor due to thought organization problems.
>
> **Word knowledge and Usage**
> Results of the Word Classes of the CELF-3 Spanish Edition indicates <u>[MRB] is exhibiting significant problems in recognizing and using word associations.  This area of weakness may hinder her ability to make predictions, create meaning, make inferences and use analogical reasoning for problem solving.</u>
>
> **Informal Oral Language Sample**

---

[2] The Commissioner also noted in his brief that there are "several areas in which Ms. Montoya recorded frequent problems in the categories of social communication, receptive language, and expressive language."  Def.'s Resp. at 9 (citing to Tr. 383-84).

> A total of 58 utterances were noted as [MRB] engaged in conversation, responded to questions and retold stories. [MRB] maintained fair eye contact and participated in a very limited conversation. <u>She has significant problems with thought organization</u>. Inconsistent grammar errors and poor vocabulary skills contributed to poor discourse skills.

Tr. 281(emphasis added).  In her summary, Ms. Hunt noted: "[MRB] is a 12 year 1 month old female who is exhibiting moderate receptive and <u>severe expressive language difficulties</u> in both Spanish and English."  Tr. 282.  Ms. Hunt opined (1) "[MRB's] expressive/receptive language and receptive/expressive vocabulary weaknesses <u>will continue to impact literacy based academic requirements as she advances to higher grade levels</u>" and (2) "[i]ncreased expectations of independent literacy/semantic relationship skills will highlight her weaknesses and result in inadequate academic performance without specific intervention in the areas of higher level vocabulary and language development." *Id.* (emphasis added).

Additionally, MRB's sixth grade teacher completed a questionnaire and noted MRB was reading, writing and performing math at the third grade level even though "she received special education services in all classes but her one elective."  Tr. 364.  Significantly, under "Acquiring and Using Information," MRB's teacher rated her as have a **very serious** problem (1) understanding and participating in class discussions and (2) in providing organized oral explanations and adequate descriptions.  Tr. 364.  MRB's teacher also rated her as having a **serious problem** (1) recalling and applying previously learned material and (2) applying problem-solving skills in class discussions.  *Id.*

The Commissioner contends the ALJ's failure to mention Ms. Hunt's evaluation under the domain of "acquiring and using information" is of no consequence because the ALJ mentioned Ms. Hunt's evaluation under the domain of "interacting and relating with others."  Under this

11

domain, the Commissioner considers how well a claimant initiates and sustains emotional connections with others, develops and uses the language of the claimant's community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others.  20 C.F.R. § 416.926a(b)(i).  However, the only mention by the ALJ of Ms. Hunt's evaluation under this domain was the following statement: "The Speech and Language Evaluation dated November 27, 2003 by Mary Hunt, MA showed that in spontaneous speech, [MRB] was judged to be 90 to 100 percent intelligible depending on the task and whether or not she was speaking in English or Spanish."  Tr. 506.

      The ALJ relied extensively on the May 2004 Speech and Language Questionnaire Ms. Montoya's completed, specifically her responses to the categories listed under <u>Receptive Language and Expressive Language</u>, to find MRB had a marked limitation in the domain of interacting and relating with others even though MRB's sixth grade teacher completed a questionnaire and opined that MRB had no serious problem in this domain.  Tr. 364.  In fact, under this domain, the teacher found "an obvious problem" in only two categories: (1) using language appropriate to the situation and listener; and (2) using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.  The teacher specifically noted: "[MRB] does not seem to have a problem interacting with peers."  Tr. 366.

      Ms. Montoya's responses to the May 2004 Speeach and Language Questionnaire also supports the teacher's perception of MRB's ability in this domain.  Under "Social Communication," Ms. Montoya found MRB: (1) never had a problem taking turns verbally; (2) never had trouble using greetings and other social conventions (e.g., please); (3) never had trouble initiating conversations with friends; (4) never had trouble maintaining conversation with friends;

(5) never had trouble staying on topic; (6) never used language not relevant to the topic; (7) never had trouble conversing with friends and family in everyday conversation; (8) and never misinterpreted body language or facial expressions.  Tr. 383; *see also* Tr. 405 (excellent marks by teacher in areas of (1) cooperating with others, (2) respecting rights and property of others, (3) participating in group activities); Tr. 407 (same); Tr. 552-554 (Reported on 12/22/2005 Student Profile under Social/Emotional Behavioral– "Gets along well with peers.  Her behaviors demonstrate those typical of other persons of her age.  No concerns."  MRB spending 100% of her day in the regular education environment); Tr. 562 (MRB is well liked by peers and is very respectful to adults); Tr. 582 (January 17, 2007 Student Profile – "MRB is having a fairly successful academic year as well as good transition to high school.  MRB communicates eagerly with her classmates.").

It is not clear to the Court whether the ALJ confused the two domains (some areas overlap) since Ms. Hunt's evaluation and Ms. Montoya's responses to the May 2004 Speech and Language Questionnaire, specifically Ms. Montoya's responses to the categories under Receptive and Expressive language, are very relevant to the domain of acquiring and using information.  Accordingly, the Court will remand the case to allow the ALJ to reconsider his findings.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**